AO 91 (Rev. 11/11)   Criminal Complaint

# UNITED STATES DISTRICT COURT
### for the
### Southern District of Florida

| | |
|---|---|
| United States of America | ) |
| v. | ) |
| | ) Case No.   21-mj-6320-AOV |
| | ) |
| Luis Berkman, Bryan Samuel Berkman, Philip | ) |
| Lichtenfeld, and Sergio Rodrigo Mendez Mendizabal | ) |
| | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTORNIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of   November 2019 through April 2020   in the counties of   Miami-Dade and Broward   in the

Southern   District of   Florida   , the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| 18 U.S.C. § 1956(h) | Conspiracy to Commit Money Laundering |

This criminal complaint is based on these facts:

**SEE ATTACHED AFFIDAVIT.**

☑ Continued on the attached sheet.

*Complainant's signature*

HSI Special Agent Jonathan Eades

*Printed name and title*

Facetime

Attested to by the Applicant in accordance with the requirements of Fed.R.Crim. 4.1 by Telephone.

Date:   May 20, 2021

*Judge's signature*

City and state:   Fort Lauderdale, Florida

Hon. Alicia O. Valle, U.S.M.J.

*Printed name and title*

## AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT

I, Jonathan Eades, being duly sworn, depose and state as follows:

### AGENT BACKGROUND AND INTRODUCTION

1.      I am a Special Agent with Homeland Security Investigations ("HSI") and have been so employed since October 2001.  As a Special Agent, my responsibilities include the investigation of financial crimes under the Money Laundering Control Act and the Bank Secrecy Act and related offenses.  I have a Bachelor of Science degree in Political Science from The Citadel.  I completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center in Glynco, Georgia, followed by the Customs Basic Enforcement School in 2002.  Since my employment with HSI, I have received extensive training and relevant experience in conducting financial investigations that includes the analysis of individual and business records such as journals, ledgers, bank accounts, invoices, receipts and other records evidencing violations of the Money Laundering Control Act and related financial crimes.  Prior to my Federal Law Enforcement career, I was a state certified Police Officer in South Carolina for approximately ten years where I rose to the rank of Detective.  Currently, I am assigned to the Financial Crimes investigation group for HSI in Fort Lauderdale, Florida.

2.      I am familiar with the facts and circumstances set forth below from my personal participation in the investigation, including my review of text messages, voice messages, email communications, bank records, other documents, and conversations with other law enforcement officers and other individuals.  Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation.  Where the contents of documents and the actions, statements, and

conversations of others are reported herein, they are reported in substance and in part, unless noted otherwise.

3.      Your affiant has participated in a criminal investigation into **SERGIO RODRIGO MENDEZ MENDIZABAL**, a Bolivian citizen who is believed to be currently located in Florida, **BRYAN SAMUEL BERKMAN**, a U.S. citizen and resident of Florida, **LUIS BERKMAN**, a U.S. citizen and resident of Georgia, and **PHILIP LICHTENFELD**, a U.S. citizen and resident of Argentina who is believed to be currently located in Florida.  Based on the evidence gathered through this investigation, there is probable cause to believe that from in or around November 2019 through in or around April 2020, **SERGIO RODRIGO MENDEZ MENDIZABAL, BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, and **PHILIP LICHTENFELD**, in violation of Title 18, United States Code, Section 1956(h), did knowingly and willfully combine, conspire, confederate, and agree with each other and with others to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place outside of the United States to and through a place in the United States, and from a place in the United States to and through a place outside of the United States, with the intent to promote the carrying on of one or more specified unlawful activities, namely: (i) a felony violation of the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2, pursuant to Title 18, United States Code, Section 1956(c)(7)(D); and (ii) an offense against a foreign nation involving bribery of a public official and public servant, in violation of the Penal Code of the Plurinational State of Bolivia ("Bolivia"), pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv).

## THE U.S. FOREIGN CORRUPT PRACTICES ACT (FCPA)

4.      Your affiant is aware that the FCPA was enacted by Congress for the purpose of, among other things, making it unlawful to act corruptly in furtherance of an offer, promise, authorization, or payment of money or anything of value, directly or indirectly, to a foreign official for the purpose of influencing a foreign official, inducing a foreign official to take or omit to take certain acts, and securing an improper advantage in order to obtain or retain business for or with, or direct business to any, person.  15 U.S.C. §§ 78dd-1, *et seq.*

5.      The FCPA prohibits "domestic concerns"—which include (A) any individual who is a citizen, national, or resident of the United States and (B) companies that are incorporated in the United States or have their principal place of business in the United States—or any officer, director, employee or agent of such domestic concern or stockholder acting on behalf of such domestic concern, from making use of the mails or any means or instrumentality of interstate commerce corruptly in furtherance of an offer, payment, promise to pay, or authorization of the payment of any money, or offer, gift, promise to give, or authorization of the giving of anything of value, to a foreign official or to a person, while knowing that all or part of such money or thing of value would be and had been offered, given, or promised to a foreign official, for purposes of (i) influencing acts or decisions of such foreign official in his official capacity; (ii) inducing such foreign official to do or omit to do acts in violation of the lawful duty of such official; (iii) securing any improper advantage; or (iv) inducing such foreign official to use his influence with a foreign government or agencies or instrumentalities thereof to affect or influence acts or decisions of such government or agencies or instrumentalities, in order to assist the domestic concern to obtain or retain business for or with, or direct business to, any person.  15 U.S.C. §§ 78dd-2(a) and (h)(1).

**THE PENAL CODE OF BOLIVIA**
**RELATING TO BRIBERY OF A PUBLIC OFFICIAL AND PUBLIC SERVANT**

6.      My review of an English translation of the Penal Code of Bolivia, in effect from at least in or around 2019 and 2020, revealed that it contains the following relevant provisions relating to bribery of a public official and public servant, in relevant part, as translated from Spanish:

a.      Article 145 [Own Passive Bribery]: The public servant or authority who, in order to do or stop doing something related to his or her functions, or against his or her duties, receives for his or herself or a third party, directly or through an intermediary, any gift or any other benefit, or accept offers or promises, will be punished with imprisonment from three to eight years.

b.      Article 146 [Misuse of Influence]: The public servant or authority that directly or through an intermediary obtains advantages or benefits, for him or herself or a third party, taking advantage of his or her office or improperly using the influences derived therefrom, will be sanctioned with imprisonment of three to eight years.

c.      Article 158 [Active Bribery]: Anyone who directly or through an intermediary, gives or promises to a public official or authority, gifts or any other benefit, in order for him or her to do or stop doing something related to his or her office, will be sanctioned with the penalty of Art. 145, reduced by one third.  The individual who has occasionally acceded to the request for a gift or benefit requested by a public authority or official, and reports it to the competent authority before the criminal prosecution of the crime begins, shall be exempt from penalty for this crime.

**RELEVANT ENTITIES AND INDIVIDUALS**

7.      Ministerio de Gobierno de Estado Plurinacional de Bolivia (the "Bolivian Ministry of Government") was the Bolivian ministry responsible for public safety in Bolivia.  The Bolivian

Ministry of Government was a "department" of the Bolivian government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

8.      Ministerio de Defensa de Estado Plurinacional de Bolivia (the "Bolivian Ministry of Defense") was responsible for the defense of Bolivia and its armed forces.  The Bolivian Ministry of Defense was a "department" of the Bolivian government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

9.      **SERGIO RODRIGO MENDEZ MENDIZABAL**, the defendant, was a citizen of Bolivia who served as an official in the Bolivian Ministry of Government from at least in or around 2019 through at least in or around 2020.  **SERGIO RODRIGO MENDEZ MENDIZABAL** was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).  **SERGIO RODRIGO MENDEZ MENDIZABAL** was also a "public official" and a "public servant" as those terms are used in the Bolivian Penal Code, Articles 145, 146, and 158.  **SERGIO RODRIGO MENDEZ MENDIZABAL** is believed to be currently located in Florida.

10.      "Co-Conspirator 1," an individual whose identity is known to your affiant, was a citizen of Bolivia and a high-ranking official in the Bolivian Ministry of Government.  Co-Conspirator 1 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).  Co-Conspirator 1 was also a "public official" and a "public servant" as those terms are used in the Bolivian Penal Code, Articles 145, 146, and 158.

11.      "Co-Conspirator 2," an individual whose identity is known to your affiant, was a citizen of Bolivia and an official in the Bolivian Ministry of Defense.  Co-Conspirator 2 was a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-

2(h)(2)(A). Co-Conspirator 2 was also a "public official" and a "public servant" as those terms are used in the Bolivian Penal Code, Articles 145, 146, and 158.

12.     "Intermediary Company," a company whose identity is known to your affiant, was a Florida company that sold tactical equipment, including to the Bolivian Ministry of Defense. Intermediary Company had a business address in Tamarac, Florida. Intermediary Company was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

13.     **BRYAN SAMUEL BERKMAN**, the defendant, was a citizen of the United States who owned Intermediary Company. **BRYAN SAMUEL BERKMAN** resided in Tamarac, Florida. **BRYAN SAMUEL BERKMAN** was a "domestic concern" and an officer, director, employee, and agent of a "domestic concern," and a stockholder thereof acting on behalf of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

14.     **LUIS BERKMAN**, the defendant, was a citizen of the United States and the father of **BRYAN SAMUEL BERKMAN**. **LUIS BERKMAN** resided in Dunwoody, Georgia. **LUIS BERKMAN** was a close associate of **SERGIO RODRIGO MENDEZ MENDIZABAL** and an associate of Co-Conspirator 1. **LUIS BERKMAN** was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

15.     **PHILIP LICHTENFELD**, the defendant, was a citizen of the United States and an associate of **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, and **SERGIO RODRIGO MENDEZ MENDIZABAL**. **PHILIP LICHTENFELD** resided in Argentina, but is believed to be currently located in Florida. **PHILIP LICHTENFELD** was a "domestic concern" and an agent

of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).

16.     "Individual 1," an individual whose identity is known to your affiant, was a citizen of Bolivia and an associate of **PHILIP LICHTENFELD**.  Individual 1 opened a personal checking account ending in 6222 at U.S. Bank 2, defined below, in Miami-Dade County ("Individual 1's 6222 Account").

17.     "Brazil Company," a company whose identity is known to your affiant, was a company based in Brazil that manufactured tactical and non-lethal defense equipment.

18.     U.S. Bank 1, where Intermediary Company maintained a business checking account ending in 2425 at a branch in Florida (the "2425 Account"), was headquartered in San Francisco, California, and insured by the Federal Deposit Insurance Corporation ("FDIC").

19.     U.S. Bank 2, where Intermediary Company maintained a business checking account ending in 0506 at a branch in Florida (the "0506 Account"), was headquartered in New York, New York, and insured by the FDIC.

## OVERVIEW OF THE SCHEME TO LAUNDER BRIBERY PROCEEDS

20.     As described in greater detail below, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, and **PHILIP LICHTENFELD** paid bribes totaling at least $582,000 to **SERGIO RODRIGO MENDEZ MENDIZABAL**, an official in the Bolivian Ministry of Government, and at least $20,000 to Co-Conspirator 2, an official in the Bolivian Ministry of Defense, in exchange for using their official positions to assist Intermediary Company, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, **PHILIP LICHTENFELD,** and others to obtain and retain business for Intermediary Company, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**,

**PHILIP LICHTENFELD**, and others in violation of the FCPA and Bolivia's laws against bribery of a public official and public servant.

21.     With the intent to promote the carrying on of the illegal bribery scheme, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, **PHILIP LICHTENFELD**, and **SERGIO RODRIGO MENDEZ MENDIZABAL**, together with others, caused transfers from a bank account at the Central Bank of Bolivia located in Bolivia to bank accounts belonging to Intermediary Company located in the United States, and transfers from a bank account belonging to Intermediary Company located in the United States to a bank account controlled by **PHILIP LICHTENFELD** located in Bolivia, in violation of U.S. money laundering laws.

## THE BRIBERY AND MONEY LAUNDERING SCHEME

22.     From at least in or around November 2019 through at least in or around April 2020, **SERGIO RODRIGO MENDEZ MENDIZABAL**, Co-Conspirator 1, Co-Conspirator 2, and others used their official positions to assist Intermediary Company with obtaining government contracts to supply non-lethal weaponry and tactical equipment to the Bolivian Ministry of Defense and to receive payment from the Bolivian Ministry of Defense.

23.     In or about November 2019, **BRYAN SAMUEL BERKMAN**, the owner of Intermediary Company, and his father, **LUIS BERKMAN**, sought to win a contract from the Bolivian government to act as an intermediary for the Bolivian Ministry of Defense's purchase of tear gas and other non-lethal equipment from Brazil Company.

24.     On or about November 16, 2019, **SERGIO RODRIGO MENDEZ MENDIZABAL**, using email address rodrigo@[XX].com, sent an email to **BRYAN SAMUEL BERKMAN** at bryanberkman@[XX].com (the "Bryan Berkman Personal Email Account"), attaching a letter from Co-Conspirator 1 addressed to **BRYAN SAMUEL BERKMAN**, in his

8

capacity as a representative of Intermediary Company, seeking quotes for tear gas and other non-lethal equipment.

25.    On or about November 16, 2019, **BRYAN SAMUEL BERKMAN** sent a WhatsApp text message to **SERGIO RODRIGO MENDEZ MENDIZABAL** requesting a letter from the Bolivian government stating that a competitor of Intermediary Company (the "Competitor") had been "banned" from selling Brazil Company's tear gas to the Bolivian government: "Uncle, this [Competitor] guy is telling the [Brazil Company] people he still has an entry with the government to be able to sell the gases.  The only means of ensuring support for [Brazil Company] is for a letter to be sent to [Competitor] stating that it has been banned and for a copy to be sent to me so I can confirm it with [Brazil Company].  The issue is that [Competitor] has sold a lot of gases on behalf of [Brazil Company] over the last three years, so they're obviously being very careful as to how they try to take the matter forward."  (Translated from Spanish).[1]

26.    On or about December 19, 2019, Intermediary Company executed a contract with the Bolivian Ministry of Defense to supply tear gas and other non-lethal equipment in exchange for approximately $5,649,137 (the "Tear Gas Contract").  **BRYAN SAMUEL BERKMAN** signed the Tear Gas Contract on behalf of Intermediary Company.

27.    A purchase order dated December 17, 2019, shows that Intermediary Company purchased the equipment required under the Tear Gas Contract from Brazil Company for approximately $3,357,735, which left Intermediary Company with approximately $2,291,402.

---

[1] The identification of the authors and recipients of the text messages referenced in this affidavit is based on a review of (i) the messages stored in the phones of **BRYAN SAMUEL BERKMAN**, **PHILIP LICHTENFELD**, and Individual 1; and (ii) the contacts stored in the phones of **BRYAN SAMUEL BERKMAN**, **PHILIP LICHTENFELD**, and Individual 1.

28.     On or about December 31, 2019, **BRYAN SAMUEL BERKMAN**, using the Bryan Berkman Personal Email Account, sent an email to **SERGIO RODRIGO MENDEZ MENDIZABAL**'s email address ending in @mingobierno.gob.bo (the "Mendez Official Email Account"), attaching a letter "requested by the Ministry of Defense" (translated from Spanish) confirming an extension of the date by which Intermediary Company had to provide its first delivery of equipment to the Ministry of Defense pursuant to the Tear Gas Contract until January 10, 2020.

29.     On or about January 4, 2020, **LUIS BERKMAN** sent a WhatsApp text message to **BRYAN SAMUEL BERKMAN** referring to **PHILIP LICHTENFELD**'s involvement in the scheme: "Philip is with us ($500K fee).  I'll talk to you tomorrow."  (Translated from Spanish). Based on the evidence collected in this investigation, your affiant believes that **PHILIP LICHTENFELD** not only helped to coordinate bribe payments to **SERGIO RODRIGO MENDEZ MENDIZABAL** and Co-Conspirator 2, but also assisted in obtaining a "guarantee" of payment to Brazil Company to ensure that Brazil Company would make the first delivery under the Tear Gas Contract on January 10, 2020, even though Intermediary Company had not yet received the funds from the Bolivian Ministry of Defense to make the payment to Brazil Company.

30.     Between in or around December 2019 and in or around March 2020, the Bolivian Ministry of Defense tried unsuccessfully to transfer payment in the amount of approximately $5,649,137 to Intermediary Company's bank account in the United States under the Tear Gas Contract.

31.     For example, on or about January 13, 2020, the Bolivian Ministry of Defense caused the Central Bank of Bolivia to wire transfer approximately $5,649,137 from a bank account at the Central Bank of Bolivia in Bolivia to the 2425 Account at U.S. Bank 1 belonging to

Intermediary Company in Florida, in connection with the Tear Gas Contract (the "January 13, 2020, Wire Transfer"). Following the January 13, 2020, Wire Transfer, representatives of U.S. Bank 1 raised questions about the transaction.

32.    On or about January 15, 2020, **SERGIO RODRIGO MENDEZ MENDIZABAL** sent an email using the Mendez Official Email Account to a representative of U.S. Bank 1, which held the 2425 Account for Intermediary Company, copying the Bryan Berkman Personal Email Account, and stating, "I am writing from the Bolivian Ministry of Government to request to be contacted in case further information is required in relation to the contract signed by my country's government agencies with [Intermediary Company]." (Translated from Spanish). **SERGIO RODRIGO MENDEZ MENDIZABAL** signed the email, "Rodrigo Méndez Mendizabal, MINISTRY OF GOVERNMENT." (Translated from Spanish).

33.    On or about January 29, 2020, U.S. Bank 1 declined to accept the January 13, 2020, Wire Transfer and returned the approximately $5,649,137 to the Central Bank of Bolivia.

34.    On or about March 13, 2020, **SERGIO RODRIGO MENDEZ MENDIZABAL** sent a WhatsApp text message to **LUIS BERKMAN** and **PHILIP LICHTENFELD** containing a screenshot of a text message conversation between **SERGIO RODRIGO MENDEZ MENDIZABAL** and another Bolivian official in the Ministry of Government relating to what your affiant believes to be a reference to a wire payment from the Central Bank of Bolivia to Intermediary Company. Specifically, **SERGIO RODRIGO MENDEZ MENDIZABAL** asked the other official if he had "news." The other official replied "Nothing . . . but they are sons of bitches. They are not answering me any more . . . We have 45 min left. Until 6:30. So that [B]anco [C]entral can make the deposit. But Economia [the Ministry of Economy] doesn't want to do it." (Translated from Spanish).

35.     On or about March 17, 2020, members of the conspiracy and others caused a transfer of approximately $3,976,902 to be made from a bank account at the Central Bank of Bolivia in Bolivia to the 0506 Account at U.S. Bank 2 belonging to Intermediary Company in Florida.  The payment was made in connection with the Tear Gas Contract.

36.     On or about March 18, 2020, Intermediary Company wire transferred approximately $3,357,735 from the 0506 Account at U.S. Bank 2 to a bank account belonging to Brazil Company in Brazil to pay for the equipment required under the Tear Gas Contract for the Bolivian Ministry of Defense.

37.     On March 27, 2020, **LUIS BERKMAN** forwarded a WhatsApp voice message from an unidentified speaker to **BRYAN SAMUEL BERKMAN**, **PHILIP LICHTENFELD**, and another associate of **PHILIP LICHTENFELD**, stating, "Philip, uh . . . Rodri, uh . . . and Bryan, I just spoke with uh . . . with [Co-Conspirator 2], uh . . . about the payments, uh . . . he tells me that obviously because of the bureaucracy, the emergency problems in Bolivia, and obviously the serious problems in Bolivia, all of which you probably know about Rodri, that please this can take up to five (5) business days before the transfer goes out.  He has obviously explained to me the reasons and why this is the case, and I assume it is the truth, but to let you know short, brother, he tells me that please a minimum of five (5) business days for us to get paid.  Rodri, if you can find out anything from your end and confirm, let us know if there is any change.  As soon as I hear anything else I will let you know.  Take care." (Translated from Spanish).  Based on the evidence collected in this investigation, your affiant believes that "Philip" refers to **PHILIP LICHTENFELD**, "Rodri" refers to **SERGIO RODRIGO MENDEZ MENDIZABAL**, and "Bryan" refers to **BRYAN SAMUEL BERKMAN**.

38.     On or about April 8, 2020, members of the conspiracy and others caused a transfer of approximately $1,754,584 to be made from a bank account at the Central Bank of Bolivia in Bolivia to the 0506 Account at U.S. Bank 2 belonging to Intermediary Company in Florida, in connection with the Tear Gas Contract.

*April 2020 Transfer of $582,000 for the Benefit of*
*SERGIO RODRIGO MENDEZ MENDIZABAL*

39.     From at least as early as March 2020, through in or around April 2020, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, **PHILIP LICHTENFELD**, and others coordinated the payment of a $582,000 bribe to **SERGIO RODRIGO MENDEZ MENDIZABAL** in Bolivia. The $582,000 bribe originated from the same funds that Intermediary Company had received into the 0506 Account at U.S. Bank 2 from the Bolivian Ministry of Defense under the Tear Gas Contract.

40.     On or about March 21, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text message to Individual 1 to discuss a plan to deliver approximately $700,000 in cash to Bolivia: "Just yesterday they deposited part of the approximately 700,000 for me so I can deposit it for you in the USA." (Translated from Spanish).

41.     On or about April 13, 2020, Individual 1 sent a WhatsApp text message to **PHILIP LICHTENFELD**, stating, "Dear Philip the account into which you should deposit is: [U.S. Bank 2] CHECKING [account number] [Individual 1]." **PHILIP LICHTENFELD** responded, "Excellent just one more piece of information[.]  I'll do a USD 700,000 transfer today." (Translated from Spanish).  **PHILIP LICHTENFELD** then forwarded these text messages to **BRYAN SAMUEL BERKMAN**.

42.     On or about April 13, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text message to **BRYAN SAMUEL BERKMAN**, stating, "Try to do the 700K in the [U.S. Bank 2]

13

that one is important so that tomorrow they give us cash in Bolivia.  Rodri is in cbba waiting."
(Translated from Spanish).  Based on the review of evidence collected in this investigation, your
affiant believes that "cbba" refers to Cochabamba, Bolivia, and that "Rodri" refers to **SERGIO
RODRIGO MENDEZ MENDIZABAL**, who is from Cochabamba.

43.     On or about April 13, 2020, Individual 1 sent a WhatsApp text message to **PHILIP
LICHTENFELD**, stating, "I'll go to the bank tomorrow and will be sending USD 714,000 to your
[relative] in the afternoon."  (Translated from Spanish).

44.     On or about April 14, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text
message to Individual 1 that included the address for **PHILIP LICHTENFELD**'s relative's house
in Cochabamba, Bolivia.

45.     On or about April 14, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text
message to **BRYAN SAMUEL BERKMAN**, stating, "Can you confirm the [Individual 1] issue
ASAP as this is of the greatest urgency for delivering the cash in Bolivia?"  (Translated from
Spanish).  **BRYAN SAMUEL BERKMAN** responded, "In the next hour." (Translated from
Spanish).

46.     On or about April 14, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text
message to **LUIS BERKMAN** containing a screenshot of a WhatsApp message between **PHILIP
LICHTENFELD** and **SERGIO RODRIGO MENDEZ MENDIZABAL**.  The screenshot shows
that **PHILIP LICHTENFELD** texted to **SERGIO RODRIGO MENDEZ MENDIZABAL**,
"Dear Rodri When you get a chance, give me a call.  It's not urgent.  But the withdrawal will be
tomorrow, Wednesday, around 4:30pm or later.  The person who was going to take it to my
[relative] was delayed."  (Translated from Spanish).

47.     On or about April 14, 2020, Intermediary Company transferred $450,000 from the 0506 Account at U.S. Bank 2 to Individual 1's 6222 Account at U.S. Bank 2.

48.      On or about April 15, 2020, Intermediary Company transferred $250,000 from the 0506 Account at U.S. Bank 2 to Individual 1's 6222 Account at U.S. Bank 2.

49.     On or about April 15, 2020, **PHILIP LICHTENFELD** left a WhatsApp voice message for **BRYAN SAMUEL BERKMAN**, stating that Individual 1 was "going to drop off the . . . the 700, uh . . . at my [relative's] house and Rodrigo is already waiting for that." (Translated from Spanish).  Based on the evidence collected in this investigation, your affiant believes that "Rodrigo" refers to **SERGIO RODRIGO MENDEZ MENDIZABAL**.

50.     On or about April 15, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text message to **LUIS BERKMAN** containing a screenshot of a WhatsApp message between **PHILIP LICHTENFELD** and **SERGIO RODRIGO MENDEZ MENDIZABAL**.   The screenshot included a photograph of a hand-written ledger of the $700,000 that Individual 1 had brought to **PHILIP LICHTENFELD**'s relative's house.  The ledger described a "delivery" of $582,000 on "4/15/2020."   The screenshot further showed that **PHILIP LICHTENFELD** had texted to **SERGIO RODRIGO MENDEZ MENDIZABAL** that "It's already with [**PHILIP LICHTENFELD**'s relative].  Let me know when you pass by.  [**PHILIP LICHTENFELD**'s relative's address]."  (Translated from Spanish).

51.     On or about April 15, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text message to his relative that s/he would "[r]eceive: 714,000 from [Individual 1] Deliver 582,000 to Rodrigo Mendez."   (Translated from Spanish).   Based on the evidence collected in this investigation, your affiant believes that "Rodrigo Mendez" refers to **SERGIO RODRIGO MENDEZ MENDIZABAL**.

52.     On or about April 15, 2020, **PHILIP LICHTENFELD** left a WhatsApp voice message for **LUIS BERKMAN**, stating, "while we were talking Rodrigo was calling me and well . . . he was already approaching [my relative's] house to pick that up.  So . . . one more step." (Translated from Spanish).  Based on the evidence collected in this investigation, your affiant believes that "Rodrigo" again refers to **SERGIO RODRIGO MENDEZ MENDIZABAL**.

*April 2020 Transfer of $20,000 for the Benefit of Co-Conspirator 2*

53.     Co-Conspirator 2, an official in the Bolivian Ministry of Defense, provided assistance to **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, and Intermediary Company in connection with the Tear Gas Contract.

54.     For example, on or about February 20, 2020, **LUIS BERKMAN** sent a WhatsApp text message to **BRYAN BERKMAN** containing a screenshot of **LUIS BERKMAN**'s WhatsApp conversation with Co-Conspirator 2, in which **LUIS BERKMAN** had sent to Co-Conspirator 2 a modification of the Tear Gas Contract and asked Co-Conspirator 2 to let him know if anything else was needed.  Co-Conspirator 2 responded to **LUIS BERKMAN** that he would print the document and find the missing signature.

55.     On or about April 13, 2020, **PHILIP LICHTENFELD** sent an email to **BRYAN SAMUEL BERKMAN** and **LUIS BERKMAN**, stating, "I am sending you the account of my company in Bolivia in order to make the USD 500,000 electronic transfer" and including information for a bank account in Bolivia (the "LICHTENFELD Bolivia Bank Account"). (Translated from Spanish).

56.     On or about April 13, 2020, **LUIS BERKMAN** sent a WhatsApp text message to **PHILIP LICHTENFELD** with bank account information for Co-Conspirator 2's relative's bank account in the United States.

16

57.     On or about April 14, 2020, Intermediary Company transferred approximately $500,000 from the 0506 Account in the United States to the LICHTENFELD Bolivia Bank Account in Bolivia.

58.     On or about April 15, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text message to **BRYAN SAMUEL BERKMAN** confirming that "[t]he 500k arrived in Bolivia." (Translated from Spanish).

59.     On or about April 15, 2020, **LUIS BERKMAN** sent a WhatsApp text message to **PHILIP LICHTENFELD**, stating, "[Co-Conspirator 2] just called me, do you have the deposit to send to me?"   (Translated from Spanish).   Approximately three hours later, **PHILIP LICHTENFELD** sent a WhatsApp text message to **LUIS BERKMAN** containing a screenshot of a confirmation of a $20,000 wire transfer to Co-Conspirator 2's relative's bank account in the United States.

60.     On or about April 17, 2020, **PHILIP LICHTENFELD** sent a WhatsApp text message to **LUIS BERKMAN**, stating, "I sent the account to transfer the 305k to Bryan.  If you want, take advantage and transfer the additional 15k. [Co-Conspirator 2's] and [another Bolivian official's]."   (Translated from Spanish).   That same day, **PHILIP LICHTENFELD** sent a WhatsApp text message to **BRYAN SAMUEL BERKMAN** providing the account information of the LICHTENFELD Bolivia Bank Account in Bolivia.  Approximately one hour later, **BRYAN SAMUEL BERKMAN** sent a WhatsApp text message to **PHILIP LICHTENFELD**, stating, "320k sent."

61.     On or about April 17, 2020, Intermediary Company transferred $320,000 from the 0506 Account in the United States to the LICHTENFELD Bolivia Bank Account in Bolivia.

62.     Based on the foregoing, there is probable cause to believe that, from in or around November 2019 through at least in or around April 2020, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, and **PHILIP LICHTENFELD**, all "domestic concerns" under the FCPA, willfully and corruptly made use of the mails and means and instrumentalities of interstate commerce in furtherance of an offer, payment, and promise to make payments for the benefit of **SERGIO RODRIGO MENDEZ MENDIZABAL** and Co-Conspirator 2 for the purpose of influencing **SERGIO RODRIGO MENDEZ MENDIZABAL** and Co-Conspirator 2 to use their official capacities, securing an improper advantage, and inducing **SERGIO RODRIGO MENDEZ MENDIZABAL** and Co-Conspirator 2 to use their influence to affect the Bolivian Ministry of Defense and the Bolivian Ministry of Government, in order to assist Intermediary Company, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, and **PHILIP LICHTENFELD** in obtaining and retaining business for, and directing business to, **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, **PHILIP LICHTENFELD**, Intermediary Company, and others, in violation of Title 15, United States Code, Section 78dd-2.

63.     Based on the foregoing, and based on my review of the Bolivian Penal Code, there is also probable cause to believe that the bribery scheme conducted by **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, **PHILIP LICHTENFELD, RODRIGO MENDEZ MENDIZABAL**, Co-Conspirator 2, and others as described above, in which **RODRIGO MENDEZ MENDIZABAL** and Co-Conspirator 2 received bribes from **BRYAN SAMUEL BERKMAN**, **LUIS BERKMAN**, **PHILIP LICHTENFELD**, and others, in exchange for, among other things, obtaining and retaining business from the Bolivian Ministry of Defense, was an offense under, *inter alia*, Bolivian law prohibiting bribery of a public official and public servant.

## CONCLUSION

Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that:

- From in and around November 2019, and continuing through in and around April 2020, in Miami-Dade and Broward Counties, and elsewhere, the defendants, **BRYAN SAMUEL BERKMAN, LUIS BERKMAN, PHILIP LICHTENFELD,** and **SERGIO RODRIGO MENDEZ MENDIZABAL,** did knowingly and willfully combine, conspire, confederate, and agree with each other and with others to knowingly transport, transmit, and transfer, and attempt to transport, transmit, and transfer, a monetary instrument and funds from a place outside of the United States to and through a place in the United States, and from a place in the United States to and through a place outside of the United States, with the intent to promote the carrying on of one or more specified unlawful activities, namely: (i) a felony violation of the FCPA, Title 15, United States Code, Section 78dd-2, pursuant to Title 18, United States Code, Section 1956(c)(7)(D); and (ii) an offense against a foreign nation involving bribery of a public official and public servant, in violation of the Penal Code of Bolivia, pursuant to Title 18, United States Code, Section 1956(c)(7)(B)(iv). All in violation of Title 18, United States Code, Section 1956(h).

FURTHER YOUR AFFIANT SAYETH NAUGHT.

JONATHAN EADES
SPECIAL AGENT
HOMELAND SECURITY INVESTIGATIONS

Attested to by the applicant in accordance with Fed. R. Crim. P. 4.1 by Telephone (Facetime) on this 20th day of May, 2021, in Fort Lauderdale, Florida.

HONORABLE ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

19

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER: ___21-mj-6320-AOV___

## **BOND RECOMMENDATION**

DEFENDANT: Bryan Samuel Berkman

$350,000 CSB w/ Nebbia

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _Eli S. Rubin_____

AUSA:   Eli S. Rubin

Last Known Address: 7531 Black Olive Way,

Tamarac, FL 33321

What Facility:

Agent(s):   S/A Jon Eades

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)
HSI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

CASE NUMBER:  ___21-mj-6320-AOV___

## __BOND RECOMMENDATION__

DEFENDANT: Philip Lichtenfeld

Pre-Trial Detention
(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _____

AUSA:   Eli S. Rubin

Last Known Address: Argentina

What Facility:

Agent(s):   S/A Jon Eades
(FBI)   (SECRET SERVICE)   (DEA)   (IRS)  (ICE)  (**OTHER**)
HSI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**CASE NUMBER:** ___21-mj-6320-AOV___

## <u>BOND RECOMMENDATION</u>

DEFENDANT: Luis Berkman

$500,000 CSB w/ Nebbia

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _Eli S. Rubin_

AUSA:   Eli S. Rubin

Last Known Address: 5298 Vernon Lake Drive

Dunwoody, GA 30338

What Facility:

Agent(s):   S/A Jon Eades

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**<u>OTHER</u>**)

HSI

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NUMBER:   21-mj-6320-AOV

### BOND RECOMMENDATION

DEFENDANT: Sergio Rodrigo Mendez Mendizabal

Pre-Trial Detention

(Personal Surety) (Corporate Surety) (Cash) (Pre-Trial Detention)

By: _Eli S. Rubin_

AUSA:   Eli S. Rubin

Last Known Address: 5326 Grand Cypress Circle

Apt. 104

Naples, Florida

What Facility:

Agent(s):   S/A Jon Eades

(FBI)   (SECRET SERVICE)   (DEA)   (IRS)   (ICE)   (**OTHER**)

HSI