UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.   21-CR-60255-PCH

**UNITED STATES OF AMERICA,**

v.

**BRYAN SAMUEL BERKMAN,**

   **Defendant.**
_____/

**FACTUAL PROFFER**

The United States of America (the "United States") and BRYAN SAMUEL BERKMAN (the "defendant"), stipulate and agree that the Information stated herein is true and accurate and a sufficient basis for the defendant's plea of guilty to conspiracy to commit an offense against the United States, in violation of Title 18, United States Code, Section 371, charged in the instant case and the forfeiture of the assets identified in the Information.  Had this matter proceeded to trial, the defendant stipulates and agrees that the government would have proven the facts alleged below beyond a reasonable doubt and the forfeiture allegations set forth in the Information by a preponderance of the evidence.

1.   Between in or around 2019 and 2020, the Ministerio de Gobierno de Estado Plurinacional de Bolivia (the "Bolivian Ministry of Government") was the Bolivian ministry responsible for public safety in Bolivia.  The Bolivian Ministry of Government was a "department" of the Bolivian government as that term is used in the Foreign Corrupt Practices Act ("FCPA"), Title 15, United States Code, Section 78dd-2(h)(2)(A).  During the relevant time period, Arturo Carlos Murillo Prijic ("Murillo") was the Bolivian Minister of Government and Sergio Rodrigo Mendez Mendizabal ("Mendez") served as the Chief of Staff of the Bolivian Ministry of

1

Government.  Murillo and Mendez were each a "foreign official" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

2. Between in or around 2019 and 2020, the Ministerio de Defensa de Estado Plurinacional de Bolivia (the "Bolivian Ministry of Defense") was responsible for the defense of Bolivia and its armed forces.  The Bolivian Ministry of Defense was a "department" of the Bolivian government as that term is used in the FCPA, Title 15, United States Code, Section 78dd-2(h)(2)(A).

3. "Intermediary Company" was a Florida company that sold tactical equipment, including to the Bolivian Ministry of Defense.  During the relevant time period, Intermediary Company operated out of Tamarac, Florida, in Broward County, in the Southern District of Florida.  Intermediary Company was a "domestic concern" as that term is defined in the FCPA, Title 15, United States Code, Section 78dd-2(h)(1).   Intermediary Company maintained a U.S.-based bank account at U.S. Bank 1 and ending in 0506 (the "0506 Account").[1]

4. The defendant was a United States citizen who owned Intermediary Company and resided in the Southern District of Florida.  The defendant was a "domestic concern," an officer, director, employee, and agent of a "domestic concern," and a stockholder acting on behalf of a "domestic concern," as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

5. Luis Berkman was a United States citizen who worked closely with Intermediary Company and resided in Georgia.  Luis Berkman was a "domestic concern" and an agent of a

---

[1] U.S. Bank 1 was headquartered in New York, New York, and insured by the Federal Deposit Insurance Corporation ("FDIC").

"domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

6. Philip Lichtenfeld ("Lichtenfeld") was a United States citizen and associate of Luis Berkman. Lichtenfeld was a "domestic concern" and an agent of a "domestic concern" as those terms are used in the FCPA, Title 15, United States Code, Section 78dd-2(a).

7. Individual 1 was a citizen of Bolivia and an associate of Lichtenfeld. Individual 1 maintained a bank account in Miami, Florida, at U.S. Bank 1 and ending in 6222 (the "6222 Account").

## OVERVIEW

8. Between in or around October 2019 and in or around at least January 2021, the defendant and others, including, but not limited to, Luis Berkman and Lichtenfeld, knowingly and willfully conspired to use, and did use, the mails and means and instrumentalities of interstate commerce, including Intermediary Company, U.S. bank accounts, and U.S.-based email and text message communications, to corruptly offer, promise to pay, authorize the payment of, and pay, at least approximately $700,000 in bribes to Bolivian government officials, including, but not limited to, Murillo and Mendez, in order to influence those officials in their official capacities and to secure an improper advantage to assist the defendant, Intermediary Company, and others in obtaining an approximately $5.6 million contract to supply tear gas to the Bolivian Ministry of Defense (the "Illegal Bribery Scheme"). The defendant knew that this conduct was unlawful.

9. Further, between in or around October 2019 and in or around at least January 2021, the defendant and others, including, but not limited to, Murillo, Mendez, Luis Berkman, and Lichtenfeld, knowingly and voluntarily conspired to knowingly engage in monetary transactions by, through, or to a financial institution, affecting interstate commerce in criminally derived

property of a value greater than $10,000 that was derived from the Illegal Bribery Scheme. The defendant knew that this conduct was unlawful.

10. Specifically, the defendant and his co-conspirators agreed to execute, and in fact executed, the following monetary transactions:

- In or around March 2020 and April 2020, the defendant and his co-conspirators caused approximately $649,975 in wire transfers to be paid from bank accounts located in the Southern District of Florida and in Singapore, traceable to the criminal proceeds of the Illegal Bribery Scheme, to U.S.-based bank accounts controlled by Luis Berkman;

- On or about April 14, 2020, and April 15, 2020, the defendant and his co-conspirators caused approximately $700,000 in wire transfers from Intermediary Company's 0506 Account to Individual 1's 6222 Account, in order to fund U.S. currency bribe payments to Murillo and Mendez; and

- On or about April 14, 2020, the defendant and his co-conspirators caused Intermediary Company to transfer approximately $500,000 from the 0506 Account to a bank account in Bolivia for the benefit of Lichtenfeld, which represented his "fee" for participating in the Illegal Bribery Scheme.

As the defendant and his co-conspirators planned, each of these transactions involved criminally derived proceeds of the Illegal Bribery Scheme of a value greater than $10,000.

## THE BRIBERY AND MONEY LAUNDERING SCHEME

11. On or about December 19, 2019, Intermediary Company executed an approximately $5,649,137 contract with the Bolivian Ministry of Defense to supply tear gas and other non-lethal equipment (the "Tear Gas Contract"). In exchange for the Tear Gas Contract, the

defendant and Luis Berkman agreed to pay bribes to Murillo, Mendez, and other Bolivian government officials using proceeds of the Tear Gas Contract.

12. In or around January 2020, Lichtenfeld agreed to engage in the Illegal Bribery Scheme in exchange for $500,000.

13. Between approximately March 17, 2020, and approximately April 8, 2020, the defendant, Luis Berkman, Lichtenfeld, Murillo, Mendez, and others caused the Central Bank of Bolivia to wire transfer approximately $5,731,486 from a bank account in Bolivia to Intermediary Company's 0506 Account, as payment under the Tear Gas Contract.

14. On or about March 18, 2020, Intermediary Company wire transferred approximately $3,357,735 of the proceeds of the Tear Gas Contract from the 0506 Account to a bank account in Brazil to pay the manufacturer of the tear gas and non-lethal equipment that Intermediary Company supplied to Bolivia under the Tear Gas Contract.

15. On or about April 14, 2020, and April 15, 2020, the defendant, Luis Berkman, and Lichtenfeld used a portion of the remaining proceeds of the Tear Gas Contract to wire transfer approximately $700,000 from Intermediary Company's 0506 Account to Individual 1's 6222 Account. The defendant knew that these transfers were made in order for Murillo and Mendez to receive, in Bolivia, hundreds of thousands of dollars in U.S. currency bribe payments in exchange for having assisted Intermediary Company with obtaining the Tear Gas Contract. The defendant and his co-conspirators intentionally engaged in these transactions to make it difficult to trace the source of this cash.

16. On or about April 14, 2020, the defendant and his co-conspirators caused Intermediary Company to transfer approximately $500,000 of the Tear Gas Contract proceeds

from the 0506 Account to a bank account in Bolivia for the benefit of Lichtenfeld, which represented his "fee" for participating in the Illegal Bribery Scheme.

17. Between in or around January 2020 and in or around June 2020, the defendant, Luis Berkman, and Lichtenfeld also directed and caused a series of wire transfers using the Tear Gas Contract's corrupt proceeds to generate approximately $360,000 in U.S. currency in and around Miami, Florida, for the purpose of paying bribes in connection with the Illegal Bribery Scheme. The defendant and his co-conspirators intentionally engaged in complicated transactions to make it difficult to trace the source of this cash. The defendant received the $360,000 in cash and delivered it to Luis Berkman for the purpose of paying bribes in Miami, Florida, in connection with the Illegal Bribery Scheme.

18. The defendant regularly communicated via phone, WhatsApp, and email with his co-conspirators about the Illegal Bribery Scheme and the distribution of its proceeds. For example, on or about April 13, 2020, Lichtenfeld sent a WhatsApp text message to the defendant stating, "Try to do the 700K in the [U.S. bank] that one is important so that tomorrow they give us cash in Bolivia. Rodri is in cbba waiting." In this message, "cbba" refers to Cochabamba, Bolivia, and "Rodri" refers to Rodrigo Mendez, who is from Cochabamba. The defendant and his co-conspirators also assisted in transferring approximately $649,975 in corrupt proceeds from the Tear Gas Contract to Luis Berkman. Specifically:

- On or about March 27, 2020, the defendant wire transferred approximately $50,000 from Intermediary Company's 0506 Account to Luis Berkman's bank account at U.S. Bank 2 ending in 8046;[2]

---

[2] U.S. Bank 2 was headquartered in San Francisco, California, and insured by the FDIC.

- On or about April 14, 2020, the defendant wire transferred approximately $300,000 from Intermediary Company's 0506 Account to the Singapore bank account of a Singapore-based shell company (the "Singapore Bank Account");

- On or about April 17, 2020, approximately $300,000 was wire transferred from the Singapore Bank Account to Luis Berkman's account at U.S. Bank 2 ending in 8046;

- On or about April 23, 2020, Lichtenfeld wire transferred approximately $145,000 from a bank account at U.S. Bank 3 ending in 6693 to Luis Berkman's account at U.S. Bank 4 ending in 3015;[3] and

- On or about April 24, 2020, approximately $154,975 was wire transferred from the Singapore Bank Account to Luis Berkman's account at U.S. Bank 4 ending in 3015.

19. The defendant personally earned approximately $121,751 in corrupt proceeds from the Illegal Bribery Scheme.

[INTENTIONALLY LEFT BLANK]

---

[3] U.S. Bank 3 was headquartered in New York, New York. U.S. Bank 4 was headquartered in Charlotte, North Carolina. Both were insured by the FDIC.

20. The preceding statement is a summary, made for the purpose of providing the Court with a factual basis for the defendant's guilty plea to the charge against him. It does not include all the facts known to the defendant or the United States concerning criminal activity in which the defendant and others engaged. The defendant makes this statement knowingly and voluntarily and because he is in fact guilty of the crime charged.

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY

*Jil Simon*
JIL SIMON
TRIAL ATTORNEY
GERALD M. MOODY, JR.
ASSISTANT CHIEF

*Eli S. Rubin*
ELI S. RUBIN
ASSISTANT U.S. ATTORNEY

Date: 9/6/2021

Date: 9/6/2021

Date: _____

By: *Michael B Nadler*
MICHAEL NADLER
ATTORNEY FOR DEFENDANT

Date: Sep 3, 2021

By: _____
BRYAN SAMUEL BERKMAN
DEFENDANT