UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-CR-60255-HUCK

UNITED STATES OF AMERICA,

v.

BRYAN SAMUEL BERKMAN,

      Defendant.

_____/

### PRELIMINARY ORDER OF FORFEITURE

THIS MATTER is before the Court upon motion of the United States of America (the "United States") for entry of a Preliminary Order of Forfeiture ("Motion") against Defendant Bryan Samuel Berkman (the "Defendant"). The Court has considered the Motion, is otherwise advised in the premises, and finds as follows:

On September 7, 2021, the United States filed an Information charging the Defendant with conspiracy to commit an offense against the United States, namely, violation of the Foreign Corrupt Practices Act ("FCPA) in violation of 15 U.S.C. § 78dd-2, all in violation of 18 U.S.C. § 371. Information, [DE 61]. The Information also contained forfeiture allegations, which alleged that upon conviction of a violation of 15 U.S.C. § 78dd-2, the Defendant shall forfeit any property, real or personal, which constitutes or is derived from proceeds traceable to such offense pursuant to 18 U.S.C. § 981(a)(1)(C). *See id.* at 6-7.

On September 28, 2021, the Court accepted the Defendant's guilty plea to the Information. *See* Minute Entry, [DE 71, 78]; Plea Agreement ¶ 2, [DE 72]. As part of the guilty plea, the Defendant agreed to a forfeiture money judgment in the amount of $121,751.58. [DE 72 at ¶ 14].

In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found

that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, [DE 73]. The Factual Proffer also provided a basis for the forfeiture of property. *Id.*

As set forth in the Factual Proffer [DE 73], the Plea Agreement [DE 72], and the Information [DE 61], between in and around October 2019 and in or around at least January 2021, the defendant knowingly and willfully conspired to use, and did use, the mails and means and instrumentalities of interstate commerce, including Intermediary Company, U.S. bank accounts, and U.S.-based email and text message communications, to corruptly offer, promise to pay, authorize the payment of, and pay, at least approximately $700,000 in bribes to Bolivian government officials, in order to influence those officials in their official capacities and to secure an improper advantage to assist the defendant, Intermediary Company, and others in obtaining an approximately $5.6 million contract to supply tear gas to the Bolivian Ministry of Defense (the "Illegal Bribery Scheme"). Factual Proffer, [DE 73]. The defendant knew that this conduct was unlawful. Further, between in or around October 2019 and in or around at least January 2021, the defendant knowingly and voluntarily conspired to knowingly engage in monetary transactions by, through, or to a financial institution, affecting interstate commerce in criminally derived property of a value greater than $10,000 that was derived from the Illegal Bribery Scheme. *Id.*

In or around March 2020 and April 2020, the defendant and his co-conspirators caused approximately $649,975 in wire transfers to be paid from bank accounts located in the Southern District of Florida and in Singapore, traceable to the criminal proceeds of the Illegal Bribery Scheme, to U.S.-based bank accounts controlled by Luis Berkman. *Id.* On or about April 14, 2020, and April 15, 2020, the defendant and his co-conspirators caused approximately $700,000 in wire transfers from Intermediary Company's 0506 Account to Individual 1's 6222 Account, in order to fund U.S. currency bribe payments to Bolivian government officials including but not limited to

Mendez; and on or about April 14, 2020, the defendant and his co-conspirators caused Intermediary Company to transfer approximately $500,000 from the 0506 Account to a bank account in Bolivia for the benefit of Lichtenfeld, which represented his "fee" for participating in the Illegal Bribery Scheme. *Id.* As the defendant and his co-conspirators planned, each of these transactions involved criminally derived proceeds of the Illegal Bribery Scheme of a value greater than $10,000. *Id.*

On or about December 19, 2019, Intermediary Company executed an approximately $5,649,137 contract with the Bolivian Ministry of Defense to supply tear gas and other non-lethal equipment (the "Tear Gas Contract"). *Id.* In exchange for the Tear Gas Contract, the defendant and Luis Berkman agreed to pay bribes to Bolivian government officials using proceeds of the Tear Gas Contract. *Id.* In or around January 2020, Litchtenfeld agreed to engage in the Illegal Bribery Scheme in exchange for $500,000. *Id.* Between approximately March 17, 2020, and approximately April 8, 2020, the defendant and others caused the Central Bank of Bolivia to wire transfer approximately $5,731,486 from a bank account in Bolivia to Intermediary Company's 0506 Account, as payment under the Tear Gas Contract. *Id.* On or about March 18, 2020, Intermediary Company wire transferred approximately $3,357,735 of the proceeds of the Tear Gas Contract from the 0506 Account to a bank account in Brazil to pay the manufacturer of the tear gas and non-lethal equipment that Intermediary Company supplied to Bolivia under the Tear Gas Contract. *Id.* On or about April 14, 2020, and April 15, 2020, the defendant, Luis Berkman, and Lichtenfeld used a portion of the remaining proceeds of the Tear Gas contract to wire transfer approximately $700,00 from Intermediary Company's 0506 Account to Individual 1's 6222 Account. *Id.* The defendant knew that these transfers were made in order for Bolivian government officials including but not limited to Mendez to receive, in Bolivia, hundreds of thousands of

3

dollars in U.S. currency bribe payments in exchange for having assisted Intermediary Company with obtaining the Tear Gas Contract. *Id.* On or about April 14, 2020, the defendant and his co-conspirators caused Intermediary Company to transfer approximately $500,00 of the Tear Gas Contract proceeds from the 0506 Account to a bank account in Bolivia for the benefit of Lichtenfeld, which represented his "fee" for participating in the Illegal Bribery Scheme. *Id.*

Between in or around January 2020 and in or around June 2020, the defendant, Luis Berkman, and Lichtenfeld also directed and caused a series of wire transfers using the Tear Gas Contract's corrupt proceeds to generate approximately $360,000 in U.S. currency in and around Miami, Florida, for the purpose of paying bribes in connection with the Illegal Bribery Scheme. *Id.* The defendant and his co-conspirators intentionally engaged in complicated transactions to make it difficult to trace the source of this cash. *Id.* The defendant received the $360,000 in cash and delivered it to Luis Berkman for the purpose of paying bribes in Miami, Florida, in connection with the Illegal Bribery Scheme. *Id.* The defendant regularly communicated via phone, WhatsApp, and email with his co-conspirators about the Illegal Bribery Scheme and the distribution of its proceeds. *Id.* The defendant and his co-conspirators also assisted in transferring approximately $649,975 in corrupt proceeds from the Tear Gas Contract to Luis Berkman. *Id.*

On or about March 27, 2020, the defendant wire transferred approximately $50,000 from Intermediary Company's 0506 Account to Luis Berkman's bank account at U.S. Bank 2 ending in 8046. *Id.* On or about April 14, 2020, the defendant wire transferred approximately $300,000 from Intermediary Company's 0506 Account to the Singapore bank account of a Singapore-based shell company (the "Singapore Bank Account"). *Id.* On or about April 17, 2020, approximately $300,000 was wire transferred from the Singapore Bank Account to Luis Berkman's account at U.S. Bank 2 ending in 8046. *Id.* On or about April 23, 2020, Lichtenfeld wire transferred

approximately $145,000 from a bank account at U.S. Bank 3 ending in 6693 to Luis Berkman's account at U.S. Bank 4 ending in 3015. *Id.* On or about April 24, 2020, approximately $154,975 was wire transferred from the Singapore Bank Account to Luis Berkman's account at U.S. Bank 4 ending in 3015. *Id.*

The defendant, Bryan Berkman, personally received approximately $121,751 in proceeds traceable to this scheme. *Id.* In his Plea Agreement the defendant agreed that the property subject to forfeiture includes a forfeiture money judgment in the sum of at least $121,751.58 in U.S. currency, which represents the amount of proceeds traceable to the conspiracy and obtained by the defendant. [DE 72].

Based on the record in this case, the total value of the proceeds traceable to the offense of conviction is $121,751.58, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

Accordingly, based on the foregoing, the evidence in the record, and for good cause shown, the Motion is **GRANTED**, and it is hereby **ORDERED** that:

1.      Pursuant to 18 U.S.C. § 981(a)(1)(C), 21 U.S.C. § 853, and Rule 32.2 of the Federal Rules of Criminal Procedure, a forfeiture money judgment in the amount of $ 121,751.58 is hereby entered against the Defendant.

2.      The United States is authorized to conduct any discovery that might be necessary to identify, locate, or dispose of forfeited property, and to resolve any third-party petition, pursuant to Rule 32.2(b)(3), (c)(1)(B) of the Federal Rules of Criminal Procedure and 21 U.S.C. § 853(m).

3.      Pursuant to Rule 32.2(b)(4) of the Federal Rules of Criminal Procedure, this Order is final as to the Defendant.

4.      The Court shall retain jurisdiction in this matter for the purpose of enforcing this Order, and pursuant to Rule 32.2(e)(1) of the Federal Rules of Criminal Procedure, shall amend this Order, or enter other orders as necessary, to forfeit additional specific property when identified.

**DONE AND ORDERED** in Miami, Florida, on February 21, 2022.

PAUL C. HUCK
UNITED STATES DISTRICT JUDGE